# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| U.S. ex rel. Everardo T. Alegria (B-01085), | ) ) ) | |
| Petitioner, | ) ) | Case No: 14 C 5451 |
| v. | ) ) ) | Judge Philip G. Reinhard |
| Tarry Williams, et al. | ) ) | |
| Respondents. | ) | |

## ORDER

For the reasons stated below, Everardo T. Alegria's petition [1] and amended petition [27] under 28 U.S.C. § 2254 are dismissed. The court also denies his request for an evidentiary hearing and declines to issue a certificate of appealability. All pending motions are dismissed as moot. [39], [41]. The case is dismissed in its entirety.

## STATEMENT-OPINION

On July 3, 2014, petitioner, Everardo T. Alegria, ("Alegria" or "petitioner") a state prisoner, filed a petition pursuant to 28 U.S.C. § 2254 raising numerous claims attacking his 2000 conviction for one count of armed violence, for which he received a sentence of 30 years imprisonment, as well as one count of possession with intent to deliver cocaine and two counts of delivery of a substance containing cocaine, for which he received lesser concurrent sentences. *See* [1], [32-3]. In response to the petition, respondent Tarry Williams filed a motion for a more definite statement. *See* [20]. In his motion, respondent argued that petitioner needed to amend his petition to clarify what his exact claims were and supplement the pages that were missing from the petition. After reviewing both the motion and the petition, the court agreed with respondent and instructed petitioner to file an amended petition. *See* [21].

After the court issued this Order, petitioner filed a motion seeking an extension of time to file an amended petition. The court granted petitioner's motion and petitioner filed his amended petition on November 17, 2014. *See* [26]; [27].

In response to the amended petition, respondent filed a motion to dismiss. *See* [32-1]. In the motion, respondent argues that petitioner's amended petition is untimely because the petition was filed after the one-year limitations period and petitioner has not alleged that his untimeliness should be excused because of a state-created impediment or because of a newly recognized constitutional

1

right or newly discovered evidence. *See* [32-1] at 3-4. Petitioner responded to the motion to dismiss (*see* [40]), in which he contended that any untimeliness should be excused because he could raise evidence of actual innocence. The court granted respondent leave to file a sur-reply in response, which respondent filed on April 9, 2015. *See* [44]. The motion is now ripe for the court's review.

28 U.S.C. § 2254 limits a federal district court's ability to grant habeas relief to state prisoners. Relief will not be granted unless the court determines that a state court's adjudication of a claim resulted in a decision that was 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court[;]" or was 2). . . "based on an unreasonable determination of the facts in light of the evidence presented. . . " 28 U.S.C. § 2254 (d)(1)-(2). The federal courts review a state court's decision on a deferential standard of review. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). A federal court may not grant relief if it determines a state court applied federal law incorrectly. Instead, a writ can only be issued if the federal court determines that a state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). This is a difficult standard for a habeas petitioner to prove as the Seventh Circuit has defined objectively unreasonable as "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).[1]

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the applicable statute of limitations for federal habeas corpus claims. *See Graham v. Borgen*, 483 F.3d 475, 477 (7th Cir. 2007). The AEDPA imposes a one-year statute of limitations for filing a federal habeas petition. It provides litigants one-year from the latest of several dates specified as follows:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution of law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence

---

[1]As recently stated in *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) the "AEDPA likewise imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' this Court." *Id.* (quoting § 2254 (d)(1)).

28 U.S.C. § 2244(d)(1).

The AEDPA allows for the statute of limitations to be tolled during the time in which a properly filed application for state post-conviction relief with respect to pertinent judgment is pending. 28 U.S.C. § 2244(d)(2). "It can also be tolled in extraordinary circumstances outside of the petitioner's control." *Graham*, 483 F.3d at 477 (citing *Moore v. Battaglia*, 476 F.3d 504, 506 (7th Cir. 2007)).

In this case, petitioner has not argued that a state-created impediment limited his right to file a timely habeas corpus petition, nor has he argued that his petition is timely because of newly discovered evidence or a newly enacted constitutional right. As a result, the date which the court must examine to determine whether the instant petition is timely is the date in which petitioner's judgment became final and the date in which his state post-conviction proceedings were completed. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) (noting that when none of the other subsections apply, a petitioner's one-year clock runs from the date his judgment became final). Thus, if the instant petition was filed over one-year after petitioner's judgment became final (and after the tolling ceased with respect to his postconviction motions), it is untimely and must be dismissed.

Upon reviewing the record, the court concludes the instant petition is untimely and must be dismissed. For the sake of completeness, the court will briefly summarize petitioner's state court and post-conviction proceedings to explain why dismissal is warranted.

In September 2001, a Winnebago County jury convicted petitioner of one count of possession with intent to deliver cocaine (720 ILC 570/40(a)(2)(B)), one count of armed violence (720 ILCS 5/33A - - 2), and two counts of delivery of a substance containing cocaine (720 ILCS 570/401(a)(2)(A)). *See* [32-3] at 1. After the trial, petitioner received an aggregate sentence of 30 years' imprisonment. *See id.*

After he was sentenced, petitioner filed a direct appeal. On appeal, petitioner argued that the trial court abused its discretion in joining separate indictments for trial and argued that there was insufficient evidence to find that he was guilty beyond a reasonable doubt for the crimes which he was convicted. Petitioner also argued that he received ineffective assistance of counsel at trial and claimed the trial court erred in denying his motion *in limine* to suppress certain evidence. *See* [32-3] at 2.

On July 3, 2003, the Illinois Appellate Court issued its opinion which affirmed petitioner's convictions and sentence. *See* [32-3] at 1-11. In the court's Rule 23 Order, it reviewed the evidence the State presented at trial and found that all of petitioner's arguments lacked merit. *See* [32-3] at 7. It concluded that the "evidence [at trial] was more than sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt" that petitioner was guilty of the crimes which he was charged. *See* [32-3] at 9.

Shortly after petitioner received the Illinois Appellate Court's opinion, he filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. However, the Illinois Supreme Court denied that petition on May 26, 2004.[2] *See* [32-3] at 75.

On September 3, 2004, petitioner filed a *pro se* petition for postconviction relief in the Winnebago County Circuit court. *See* [32-3] at 33. In the petition, petitioner reasserted many of the arguments he made on direct appeal and claimed that he was entitled to relief because of misconduct of the trial court. On November 4, 2004, the trial court dismissed the petition and determined it was without merit. *See* [32-3] at 34.

On November 24, 2004, petitioner filed an "amended postconviction petition" in the trial court. *Id.* In the amended petition, petitioner argued that his trial counsel was ineffective and also argued that there was a conspiracy between his trial counsel, the trial court and the police and this conspiracy resulted in his wrongful conviction. *Id.*

On December 15, 2004, the trial court dismissed the amended petition. *Id.* It found that "[n]othing in [the] amended post conviction petition set[] forth a denial of petitioner's constitutional rights or a constitutional violation that would require a hearing." *Id.*

On December 22, 2004, petitioner filed a *pro se* appeal challenging the trial court's dismissal of both of the post conviction petitions. *Id.* After reviewing petitioner's arguments, the Illinois Appellate Court first determined that it lacked jurisdiction to consider the appeal of petitioner's first post conviction petition because the appeal was untimely. *See* [32-3] at 36. Next, the Illinois Appellate Court considered petitioner's arguments regarding the trial court's dismissal of the amended postconviction petition. Ultimately, the appellate court agreed with the trial court and affirmed the dismissal of the amended post conviction petition. The Illinois Appellate Court found that some of the issues petitioner raised in the amended petition were issues the court had previously addressed on direct appeal and were barred by the doctrine of *res judicata*. *See* [32-3] at 36-37. The court continued by noting that many of petitioner's other claims were "bare and unsupported conclusions" and therefore "insufficient to warrant relief . . .[.]" [32-3] at 36.

Subsequently, petitioner filed a *pro se* PLA to the Illinois Supreme Court. *See* [32-3] at 38-74. The Illinois Supreme Court denied that petition on September 26, 2006.[3] [32-3] at 75.

---

[2]Pursuant to 28 U.S.C. § 2244(d)(1), the statute of limitations began to run ninety days after the Illinois Supreme Court denied petitioner's PLA on May 26, 2004. That date was August 24, 2004. That means petitioner's Section 2254 petition was technically due one year later, on August 24, 2005. However, as the court will explain, the limitations period was tolled when petitioner filed his post conviction petition on September 3, 2004. *See* 28 U.S.C. § 2244(d)(2).

[3]When the Illinois Supreme Court denied petitioner's PLA on his amended petition for post-conviction relief on September 26, 2006, this concluded petitioner's state post conviction proceedings and re-started the statute of limitations. *See Martinez v. Jones*, 556 F.3d 637, 638-39 (7th Cir. 2009) (a successive post-conviction petition only tolls the statute of limitations if the state court grants leave to

4

On March 19, 2007, petitioner filed a second *pro se* post conviction petition in the Winnebago Circuit Court. *See* [32-3] at 77. Because he never requested permission from any of the state courts to file a successive petition, the Winnebago County Circuit Court dismissed the second petition. Petitioner appealed this dismissal, but the Illinois Appellate Court affirmed the trial court's decision on September 19, 2008. *See* [32-3] at 76-78.

On August 26, 2010, petitioner filed a motion seeking to "merge" his sentences and convictions. *See* [32-3] at 81. The trial court dismissed this motion and petitioner appealed. The Illinois Appellate Court affirmed this dismissal and the Illinois Supreme Court denied petitioner's ensuing PLA on November 28, 2012. *See* [32-3] at 81-102.

On June 22, 2014, petitioner signed his 28 U.S.C. § 2254 petition in this court. [1] at 7. This petition was filed on July 3, 2014. *See* [1].

This procedural history clearly indicates that petitioner's federal habeas petition is untimely. To summarize, petitioner's judgment became final ninety days after the Illinois Supreme Court denied petitioner's PLA on May 26, 2004. *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002) (noting that "the time for seeking [direct] review," includes the ninety days during which a petition for certiorari may be filed.). This means the statute of limitations began to run on August 24, 2004. Nine days passed before petitioner tolled the statute of limitations when he filed his initial petition for post conviction relief on September 3, 2004. *See* 28 U.S.C. § 2244(d)(2). At this time, the limitations period remained tolled until petitioner's first round of post conviction motions in state court were completed. *See id.* This occurred on September 26, 2006 when the Illinois Supreme Court denied petitioner's PLA on his amended petition for post conviction relief. Thus, petitioner had 356 days after September 26, 2006 to meet his one-year deadline to file his federal habeas petition in this court.[4] The instant petition was filed on July 3, 2014. This is over seven years too late. As such, the petition is untimely.

As a final matter, the court addresses petitioner's contention, raised for the first time in his reply brief, that his untimeliness should be excused because he is able to raise evidence of actual

---

file it). This means petitioner needed to file his petition under Section 2254 in this court by September 17, 2007. (This date reflects the nine days of un-tolled time between the date the Illinois Supreme Court denied petitioner's PLA on direct review, and the time in which petitioner filed his first petition for post-conviction relief).

[4]The court again notes that petitioner's successive postconviction motions and other filings in state court did not continue to toll the statute of limitations. *See De Jesus*, 567 F.3d at 943 (explaining that § 2244(d)(2) excludes particular time from the one-year limitation calculation and does not mean that the filing of another state post-conviction or collateral relief motion restarts the clock). However, even if such filings were to toll the limitations period, the instant petition would still be late. The Illinois Supreme Court denied petitioner's PLA on his motion to "merge" sentences and convictions in November, 2012. The instant petition was not filed until July 2014. This is clearly beyond the one-year statute of limitations.

5

innocence. In *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013), the Supreme Court held that actual innocence can serve as a "gateway" through which a habeas petitioner may excuse the expiration of the statute of limitations under § 2244(d)(1). The purpose of the exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 1931 (internal citations omitted). The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "The new evidence may include 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). "The actual innocence standard is a demanding one that 'permits review only in the 'extraordinary' case.' When deciding the ultimate question of innocence, 'the habeas court must consider all the evidence, old and new, incriminating and exculpatory' and then 'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (quoting *House*, 547 U.S. at 538).

In order to evaluate petitioner's claim of actual innocence, additional background is required. Following a 2001 jury trial, petitioner was convicted of possession of cocaine with intent to deliver and a merged conviction of armed violence, for which he received a sentence of 30 years imprisonment, as well as two counts of delivery of a substance containing cocaine, for which he received two concurrent sentences of 20 years imprisonment. *See* [32-3]. The delivery convictions were predicated on testimony that on two instances on August 2, 2000 and August 9, 2000, respectively, undercover police officers purchased cocaine from petitioner through an informant. The armed violence and possession convictions were predicated on a search of petitioner's home on August 10, 2000. The testimony at trial was that when officers approached the home, they viewed petitioner inside the residence through an open front door and announced themselves. Petitioner ran into a back bedroom and slammed the door. The officers pursued him and observed him reaching into a shelf in the bedroom closet. They ordered him to get down and he complied. During a search of the bedroom, the officers located a white sock containing several ounces of cocaine, forming the predicate for the possession conviction. During a search of the closet, the officers located a .357 revolver on the closet shelf where petitioner had been reaching with his hand, forming the predicate for the armed violence conviction. Police also recovered petitioner's cellphone, the phone number of which matched the phone number that the informant had called to arrange the August 2nd and August 9th drug transactions. After receiving *Miranda* warnings, petitioner admitted to police that the cocaine in the bedroom was his.

Here, petitioner supports his claim of actual innocence by attaching several signed statements to his reply. An October 23, 2000 sworn statement from Jose Chaves Robles, titled "My Confession" alleges that Mr. Robles visited petitioner on August 10, 2000 and "had possession of 231 grams of cocaine inside [a] white sock." *See* [40] at 21. When he heard police arriving, he left the sock and fled the house. Mr. Robles's confession concludes that "Mr. Alegria didn't have nothing to do with this." *Id.* A September 12, 2000 statement by Mr. Fernando Freeman alleges in

6

relevant part that "On or about 8-10-00 " he was walking by petitioner's home when "I saw a Mexican Male running out of the back door of the alley running out. I had stop to see what happen and there was a van and Illinois State Police Car out there. The officers did not try and catch him." *See* [40] at 35. Finally, a September 9, 2001 statement by Mr. Dwayne Sandell alleges in relevant part that "On 9.9.01 I have looked over Mr. Alegria's transcripts & discovery papers & court docket, which I believe have been tampered with by the State's Attorney's office also by state police, all judges in the circuit court's office, court reporters, law clerks. I believe Mr. Alegria had a unjustified trial for the sole purpose of incriminating a person with no fault whatsoever." *See* [40] at 34.

First, the only statement petitioner raises that arguably exonerates him is the Robles confession, which is clearly not "new evidence." *See McQuiggin*, 133 S. Ct. at 1928. In fact, as the state points out, petitioner's counsel raised the issue of the Robles confession to the state trial court immediately before jury selection in his 2001 trial. *See* [44-3] at 26-28. Petitioner's counsel filed the confession with the court and explained on the record that he did not intend to raise the evidence at trial because "my decision as his counsel is Mr. Robles' representations here were without any credibility." *Id.* Numerous courts have found that the *McQuiggin* actual innocence gateway exception does not apply where a petitioner's evidence "is based entirely on information that his attorney possessed at trial." *See, e.g. United States ex rel. Thivel v. Harrington*, 2014 WL 4344618, at *14 (N.D. Ill. Sept. 2, 2014) (unpublished opinion); *see also Johnson v. Medina*, 547 Fed. App'x. 880, 885 (10th Cir. Dec. 4, 2013) (DNA evidence available to counsel prior to guilty plea was not "new" for purposes of *McQuiggin* actual innocence exception); *Chestang v. Sisto*, 522 Fed. App'x. 389, 391 (9th Cir. June 11, 2013) (same).

Second, the Supreme Court has held that the timing of a claim of actual innocence raised in a habeas petition "is a factor bearing on the reliability of the evidence purporting to show actual innocence." *McQuiggin*, 133 S.Ct. at 1928 (internal citations and modification omitted). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.* at 1935. Here, petitioner does not explain why he failed to raise these statements during his numerous state appeals and collateral attacks. The failure to raise these allegations for over thirteen years is a factor that reduces the reliability of the statements he raises here as evidence of his actual innocence. *See id.*

Finally, the statements do not address the overwhelming evidence of petitioner's guilt at trial. The testimony at trial was that when police announced themselves at petitioner's home on August 10, 2000, he fled into his bedroom and began reaching for a firearm, actions difficult to reconcile with him having "nothing to do" with the cocaine found in the bedroom. In addition, petitioner's recovered cellphone matched the phone used to set up numerous controlled drug purchases. And petitioner himself admitted to officers following *Miranda* warnings that the cocaine recovered in his bedroom belonged to him. Given this evidence, the court cannot find that if petitioner had introduced the Robles, Freeman, and Sandell statements at trial, they would have been so convincing that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

*Id.* Therefore, the court finds that the actual innocence exception has not been met and petitioner's *habeas corpus* petition [1], [27] is dismissed as untimely.[5]

The court declines to issue a certificate of appealability. Rule 11 of the Rules governing Section 2254 cases in the United States District Courts mandate that the court rule on a certificate of appealability when it denies a petition under Section 2254 or otherwise closes the case. A certificate of appealability is not granted as a matter of right and instead may only be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing occurs when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

While petitioner attempted to raise constitutional issues in his petition, the court finds his petition is clearly untimely and does not find that "reasonable jurists could debate whether . . . the petition should have been resolved in a different matter." *Id.* Thus, because there is no substantial constitutional question for appeal, the court declines to issue a certificate of appealability.

For the reasons above, respondent Tarry Williams' motion to dismiss [32-1] is granted. Everardo Alegria's petition [1] and amended petition [27] under 28 U.S.C. § 2254 are dismissed. Petitioner's pending motions for discovery [39] and for status [41] are dismissed as moot. The court declines to issue a certificate of appealability and denies Alegria's request for an evidentiary hearing. The cause is dismissed in its entirety.

Date: 4/13/2015                                ENTER:

                                               _____
                                               United States District Court Judge

*Notices mailed by Judicial Staff. (JD)*

---

[5]As an aside, the court notes that even if the instant petition was timely, it would also fail on the merits. Petitioner asserts a plethora of arguments, most of which are difficult to discern and are only bare conclusions without support. *See e.g.*, [20] at 60 (noting "[t]hat the petitioner claims that crooked attorney generals and prosecutors and state police officers alleged the petitioner used several vehicles to deliver cocaine where they listed in the false complaint for search warrant . . .[.]"). Arguments of this nature do not warrant relief under Section 2254. *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001) (noting that unsupported claims in habeas corpus petitions do not meet the threshold requirements and do not warrant relief.).